IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2016

## STATE OF TENNESSEE v. STEPHANIE LYNN BICKFORD

**Appeal from the Criminal Court for White County**
**No. 2012-CR-5462      Gary McKenzie, Judge**

---

**No. M2015-00628-CCA-R3-CD – Filed March 23, 2016**

---

The defendant, Stephanie Lynn Bickford, pled guilty to statutory rape, a Class E felony, in exchange for a one-year sentence on probation.  The trial court ordered that the defendant was required to register as a sex offender, a decision the defendant now appeals.  On appeal, the defendant also argues that this court should review the trial court's decision using a de novo with a presumption of correctness standard of review, rather than an abuse of discretion with a presumption of reasonableness standard.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Michael J. Rocco, Sparta, Tennessee, for the appellant, Stephanie Lynn Bickford.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Philip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The case arises out of the nineteen-year-old defendant's sexual encounter with a thirteen-year-old boy while she was a temporary resident in another individual's home.  According to the affidavit of complaint, around 11:10 p.m. on February 4, 2012, a resident of the home walked by the living room on the way to the kitchen and in the process caught a glimpse of the defendant having sex with someone on the couch.  After the resident was finished in the kitchen, he passed back through the living room and saw

that the couple had separated. It was at that point the resident could see the defendant's sexual partner – a thirteen-year-old boy who was also a visitor in the home. The resident told the defendant to leave immediately, and he subsequently told the owner of the house about the incident. The owner notified the police.

Pursuant to the defendant's plea agreement, the trial court was to conduct a sentencing hearing to determine (1) whether the defendant should be granted judicial diversion and (2) whether the defendant was required to register as a sex offender pursuant to Tennessee Code Annotated section 39-13-506(d)(2)(B).

At the sentencing hearing, Ralph Brian Lewis, the probation officer who prepared the defendant's presentence report, testified that the defendant had a prior misdemeanor conviction for possession of drug paraphernalia. Mr. Lewis said that the defendant had complied with the conditions of probation placed on her since the time of the plea. The defendant passed a drug screen and had a work history. Mr. Lewis had no concerns about supervising the defendant.

Dr. George Thomas Netherton conducted a psychosexual evaluation of the defendant. According to the defendant's statement to Dr. Netherton as part of her evaluation, the defendant claimed to have only used alcohol one time and denied ever using drugs. Regarding the incident in question, the defendant reported that she was invited to a birthday party by a friend and, when she arrived, she observed her friend "on top of a boy." According to the defendant, she turned around and left the party, and "[t]he next thing that occurred was being handcuffed and arrested[.]" The defendant denied inappropriately touching the young man. The defendant admitted to Dr. Netherton that in the past she had forced someone to have sex, had raped someone, had sexually molested a child, and had sex with a child. Dr. Netherton noted that "[t]hese responses are significant due to [the defendant's] denial of committing the sexual offense she is charged with." Dr. Netherton determined that the defendant appeared to understand what constituted appropriate sexual behavior and an appropriate adult-child relationship.

Dr. Netherton noted that the defendant's scores on her Personality Assessment Inventory ("PAI") "strongly indicate that she did not attend appropriately in responding to the PAI items," meaning "the test results can only be assumed to be invalid." Dr. Netherton observed:

> [The defendant] rushed thru this assessment. She appeared to be more concerned about completing it and going to work than taking her time and thinking about appropriate responses. On several occasions she was asked if she understood the questions or needed assistance. She declined and

2

reported she understood the questions and was answering them honestly. On the shorter test measures she scored well and responded appropriately indicating she most likely understood the questions and the issue wasn't a reading impairment.

As to the defendant's scores on the Sexual Adjustment Inventory ("SAI"), Dr. Netherton determined:

> [The defendant]'s score on the non-sex related scales was in the severe problem range and her scores are considered distorted, inaccurate, and invalid. She attempted to minimize her problems or "fake good". Her score on the truthfulness scale for sex-related items was in the problem risk range. Problem risk scorers attempt to minimize their sex related problems or concerns. She was defensive and uses denial excessively. Her sexual adjustment score was in the average range. Child molest was in the problem range. Problematic scorers' manifest some pedophile interests and thinking. Sexual assault was in the problem risk range. Problem risk scorers have a higher than average probability of committing rape.

Looking at how the defendant scored on the other inventories, Dr. Netherton noted that the defendant claimed that she did not commit the offense and "does not believe she needs counseling because there isn't anything wrong with her." He determined that she presented a moderate risk to reoffend. Overall, Dr. Netherton recommended that the defendant participate in a sex offender treatment program that included polygraph examinations as part of the plan because of her denial of committing the offense.

On cross-examination, asked if he thought the defendant might benefit from being tested again in light of his assessment that she seemed to rush through the final two inventories, Dr. Netherton stated:

> If I had known that it was going to take this long to have the hearing, you know . . . I did this one back in, I think December [of 2014], I would liked to have tested her again on those two particular ones. I'm not sure that it would have changed the outcome, because, if she pled guilty . . . it would still come out the same end result. She would be recommended to have treatment. So, even passing them, those two, with the other stuff there, I would still recommend the same thing.

Asked about the possibility of the defendant's having to register as a sex offender, Dr. Netherton stated that doing so would not change her risk for reoffending but would hold

her more accountable "because there's another set of rules that [she would] have to go by."

Following the hearing, the trial court denied judicial diversion and ordered the defendant to register as a sex offender. In ordering the defendant to register as a sex offender, the trial court stated that the defendant had not "acknowledged in her behavior how serious her situation is." The court noted that the defendant rushed through her assessment, even though that was her opportunity to show the court that she should not be placed on the registry.

## ANALYSIS

The defendant first argues that, on review, this court should utilize a <u>de novo</u> with a presumption of correctness standard of review, rather than the abuse of discretion with a presumption of reasonableness standard enunciated in <u>State v. Caudle</u>, 388 S.W.3d 273, 278-79 (Tenn. 2012) and <u>State v. Bise</u>, 380 S.W.3d 682, 708 (Tenn. 2012), for sentencing decisions. Relying on <u>Ward v. State</u>, 315 S.W.3d 461, 472 (Tenn. 2010), the defendant asserts that sex offender registration is a collateral consequence and not a material part of her sentence. Accordingly, she asserts that a <u>de novo</u> review with a presumption of correctness is the appropriate standard for reviewing her placement on the sex offender registry as such is not part of her "sentence." However, the defendant acknowledges that another panel of this court recently held differently.

In <u>State v. Cody Lee Crawford</u>, No. E2014-01868-CCA-R3-CD, 2015 WL 3610551, at *3 (Tenn. Crim. App. June 10, 2015), a panel of this court was faced with a similar factual scenario and that defendant's challenge to placement on the sex offender registry. The panel stated that the "[d]efendant's complaint about the requirement that he become a registered sex offender is essentially a challenge to his sentence." <u>Id.</u> The panel further stated that "[w]hen a defendant challenges the length, range, or manner of service of a sentence, this [c]ourt reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness." <u>Id.</u> (citations omitted). The panel also cited the relevant statute and noted that the trial court had the discretionary authority to order the defendant to register as a sex offender. <u>Id.</u> at *3-4.

We need not determine whether the panel in <u>Crawford's</u> assessment that a challenge to one's placement on the sex offender register is basically a challenge to the sentence, subject to review only for abuse of discretion, because under either the <u>de novo</u> or abuse of discretion standard, we conclude that the trial court did not err in ordering the defendant to register as a sex offender.

Tennessee Code Annotated section 39-13-506(d)(2)(B) provides:

4

(B) In addition to the punishment provided for a person who commits statutory rape for the first time, the trial judge may order, after taking into account the facts and circumstances surrounding the offense, including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement, that the person be required to register as a sexual offender pursuant to title 40, chapter 39, part 2.

The defendant contends that there were no aggravating circumstances warranting that she register as a sex offender. We disagree. The defendant's psychosexual evaluation revealed that the defendant was "faking good" or attempting to minimize her problems, which makes some of the defendant's answers all the more disturbing. The defendant admitted to Dr. Netherton that in the past she had forced someone to have sex, had raped someone, had sexually molested a child, and had sex with a child. This response may not have been referring to the offense to which she pled guilty because she denied having inappropriate contact with the victim.

The defendant's child molestation score was in the problem range, indicating that she manifested some pedophilic interests and thinking. Her sexual assault score was in the problem risk range, indicating that she had a higher than average probability of committing rape. Dr. Netherton opined that the defendant presented a moderate risk to reoffend.

The defendant appears to have the tendency to not tell the truth or take responsibility for her actions. Even though there was an eyewitness to the statutory rape of someone who resided in the house where the defendant was temporarily staying, the defendant's version of events to Dr. Netherton was that she was invited to a birthday party by a friend and, when she arrived, she observed her friend "on top of a boy." The defendant claimed that she left the party, and "[t]he next thing that occurred was being handcuffed and arrested[.]"

In addition, the defendant claimed to Dr. Netherton that she had only drunk alcohol one time and never used illegal drugs. However, the record shows that the defendant successfully petitioned the trial court that she be allowed to enroll in a drug and alcohol rehabilitation program for treatment. The record also shows that the defendant has a prior conviction for possession of drug paraphernalia. These facts appear to indicate that the defendant was deceptive and untruthful in answering questions during her evaluation.

5

In sum, the defendant showed a tendency to disown responsibility for her situation and to not take the judicial process seriously.  She denied responsibility for the statutory rape.  She twice failed to appear for a court date while her case was pending.  She did not put forth her best effort in completing the psychosexual evaluation, potentially compromising the material for the court's consideration.  We conclude that, under either a de novo or abuse of discretion standard of review, the trial court committed no error in ordering the defendant to register as a sex offender.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE